# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 201

Kari Cathryn O'Keeffe,

Plaintiff, Appellee, and
Cross-Appellant

v.

Timothy Michael O'Keeffe,

Defendant, Appellant,
and Cross-Appellee

## No. 20190379

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Bradley A. Cruff, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen, Justices VandeWalle and Crothers, and District Judge Bahr joined. Chief Justice Jensen also filed an opinion concurring specially.

DeAnn M. Pladson (argued), Fargo, North Dakota, and Patti J. Jensen (on brief), East Grand Forks, Minnesota, for plaintiff, appellee, and cross-appellant.

Tracy J. Lyson, Fargo, North Dakota, for defendant, appellant, and cross-appellee.

**Tufte, Justice.**

[¶1]   Tim O'Keeffe appeals from district court orders denying his motion to terminate spousal support and awarding attorney's fees to Kari O'Keeffe. Because the district court erred in concluding spousal support was rehabilitative rather than permanent, we reverse the order denying Tim O'Keeffe's motion to terminate spousal support. We affirm the district court's award of attorney's fees.

I

[¶2]   Tim and Kari O'Keeffe were married in 1997 and divorced in 2015. The parties resolved all issues through mediation and negotiation, and the marriage was terminated in November 2015. Relevant to this appeal, the parties agreed Tim O'Keeffe would pay Kari O'Keeffe spousal support of $5,000 per month for 120 months.

[¶3]   The spousal support agreement in the divorce judgment stated:

> Spousal Support. Tim shall pay as and for spousal support to Kari the amount of $5,000 per month beginning November 1, 2015, and continuing on the first day of each month thereafter for a period of 120 months. The amount and duration of spousal support shall be non-modifiable by either party. The spousal support shall terminate upon the death or remarriage of Kari. It is intended that the support payable to Kari in accordance herewith shall be includable in Kari's gross income pursuant to Section 71 of the Internal Revenue Code and shall be deducted by Tim pursuant to Section 215 of the Internal Revenue Code.

[¶4]   In February 2019, Tim O'Keeffe moved the district court to terminate his spousal support obligation. He attached an affidavit with his motion which alleged Kari O'Keeffe had been habitually cohabiting with her fiance in a relationship analogous to marriage since at least January 2016. Tim O'Keeffe argued Kari O'Keeffe's cohabitation should relieve him of his spousal support

obligation under N.D.C.C. § 14-05-24.1(3). Kari O'Keeffe did not dispute the facts in Tim O'Keeffe's affidavit or present any contradictory evidence.

[¶5] The district court held two hearings on Tim O'Keeffe's motion. At an April 2019 hearing, the court heard the parties' arguments regarding spousal support. The court took Tim O'Keeffe's motion under advisement. The court requested a second hearing in August 2019 to address how an order affecting spousal support would affect distribution of the marital estate. Before the August 2019 hearing, Tim O'Keeffe filed a motion in limine and attached mediation documents to his affidavit as an exhibit. He also subpoenaed the mediator and filed a motion to compel the mediator's attendance at the August 2019 hearing. Kari O'Keeffe moved for attorney's fees, arguing Tim O'Keeffe had improperly filed the mediation documents.

[¶6] On December 1, 2019, the district court issued two orders relevant to this appeal. In the first order, the court denied Tim's motion to terminate spousal support. The court concluded that the spousal support provision in the divorce judgment did not specifically provide for spousal support to continue upon cohabitation. However, the court also concluded that because the spousal support provision was for rehabilitative support, Tim O'Keeffe was not entitled to termination of spousal support under N.D.C.C. § 14-05-24.1(4). The court denied Tim O'Keeffe's motion to terminate spousal support. In the second order, the district court granted Kari O'Keeffe's motion to strike improperly filed documents and awarded $1,590.00 in attorney's fees based on Tim O'Keeffe's improper submission of a mediation summary at the August 2019 hearing. Tim O'Keeffe appeals from both orders, and Kari O'Keeffe cross-appeals from the first order.

II

[¶7] Tim O'Keeffe argues the district court erred in denying his motion to terminate spousal support because it incorrectly concluded the spousal support provision was rehabilitative. Kari O'Keeffe argues the district court correctly denied the motion. However, on cross-appeal, she argues the district court

2

erred in finding the parties did not agree in writing that spousal support would continue after cohabitation.

> The district court's findings of fact in its decision modifying spousal support will be reversed on appeal only if they are clearly erroneous. *See Varty v. Varty*, 2019 ND 49, ¶ 6, 923 N.W.2d 131. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the basis of the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 7.

*Markegard v. Willoughby*, 2019 ND 170, ¶ 6, 930 N.W.2d 108.

[¶8] Section 14-05-24.1, N.D.C.C., governs spousal support and states:

> 1. Taking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for a limited period of time in accordance with this section. The court may modify its spousal support orders.
>
> 2. Unless otherwise agreed to by the parties in writing, spousal support is terminated upon the remarriage of the spouse receiving support. Immediately upon remarriage, the spouse receiving support shall provide notice of the remarriage to the payor spouse at the last known address of the payor spouse.
>
> 3. Unless otherwise agreed to by the parties in writing, upon an order of the court based upon a preponderance of the evidence that the spouse receiving support has been habitually cohabiting with another individual in a relationship analogous to a marriage for one year or more, the court shall terminate spousal support.
>
> 4. Subsections 2 and 3 do not apply to rehabilitative spousal support.

Subsections 2, 3, and 4 of N.D.C.C. § 14-05-24.1 were added in 2015 and took effect August 1, 2015. 2015 N.D. Sess. Laws ch. 124, § 1. The district court entered Tim and Kari O'Keeffe's amended divorce judgment in December 2015. Therefore, the 2015 amendments to section 14-05-24.1 govern here.

3

## A

[¶9] Tim O'Keeffe argues the district court erred in determining the award of spousal support in the amended judgment was for rehabilitative support. Under N.D.C.C. § 14-05-24.1(4), spousal support may not be terminated for the recipient party's habitual cohabitation with another if the spousal support award was rehabilitative. The divorce judgment here is silent as to whether the spousal support is rehabilitative or permanent. The district court found that the spousal support provision is rehabilitative. We disagree.

[¶10] Prior to the 2015 amendment to N.D.C.C. § 14-05-24.1, the terms rehabilitative support and permanent support did not appear in the statutes but only in this Court's opinions. The 2015 amendment introduced an important difference between rehabilitative support and all other support, including support our cases have referred to as "permanent" and "temporary," which we will refer to here as non-rehabilitative support. After the amendment, rehabilitative support was not subject to termination upon cohabitation, but non-rehabilitative support, including what our opinions have often but not uniformly referred to as "permanent" support, must be terminated upon a showing of cohabitation for one year. N.D.C.C. § 14-05-24.1(3) and (4). We give the statute's use of the term "rehabilitative spousal support" its plain meaning, informed by prior interpretation of that term in our opinions, which we presume the legislature has taken into account in drafting the statute. *Heck v. Reed*, 529 N.W.2d 155, 161 (N.D. 1995).

[¶11] We have said permanent spousal support and rehabilitative spousal support are two distinct remedies. *Wold v. Wold*, 2008 ND 14, ¶ 14, 744 N.W.2d 541. "Rehabilitative spousal support is appropriate when it is possible to restore a spouse to independent economic status or to equalize the burden of the divorce by increasing that spouse's earning capacity." *Id.* Permanent spousal support is appropriate when a spouse cannot be rehabilitated. *Id.* "Even when a spouse is capable of rehabilitation, permanent spousal support may be an appropriate remedy" to equalize the burdens of the divorce. *Id.*

[¶12] We have acknowledged that a "substantial disparity between the [spouses'] incomes that cannot be readily adjusted by property division or rehabilitative support" may support an award of "indefinite permanent support to maintain the disadvantaged spouse." *Krueger v. Krueger*, 2008 ND 90, ¶ 9, 748 N.W.2d 671; *see also Ingebretson v. Ingebretson*, 2005 ND 41, ¶ 9, 693 N.W.2d 1. Such "permanent" spousal support "may be appropriate when there is a substantial income disparity and a substantial disparity in earning power that cannot be adjusted by property division or rehabilitative support." *Innis-Smith v. Smith*, 2018 ND 34, ¶ 22, 905 N.W.2d 914 (citing *Stephenson v. Stephenson*, 2011 ND 57, ¶ 27, 795 N.W.2d 357); *Friesner v. Friesner*, 2019 ND 30, ¶ 14, 921 N.W.2d 898. In appropriate circumstances a district court may award both rehabilitative support and permanent, non-rehabilitative support. *Greenwood v. Greenwood*, 1999 ND 126, ¶ 9, 596 N.W.2d 317 (stating where a spouse "cannot be adequately restored to independent economic status," "a court should consider whether, in addition to rehabilitative support, permanent spousal support is also necessary.").

[¶13] Rehabilitative support includes support that is awarded to provide the receiving spouse "an opportunity to acquire an education, training, work skills, or experience to become self-supporting." *Knudson v. Knudson*, 2018 ND 199, ¶ 12, 916 N.W.2d 793. Our cases establish a preference that the district court award rehabilitative support when it is possible to restore a spouse to "independent economic status" or "when the burden of the divorce can be equalized by increasing the disadvantaged spouse's earning capacity." *Degnan v. Degnan*, 2016 ND 61, ¶ 11, 877 N.W.2d 38 (quoting *Pearson v. Pearson,* 2009 ND 154, ¶ 7, 771 N.W.2d 288). In contrast, when the burdens of divorce are equalized by support that operates directly to maintain the receiving spouse's standard of living rather than increase that spouse's own earning ability, that is non-rehabilitative or permanent support. *Williams v. Williams*, 2015 ND 129, ¶ 10, 863 N.W.2d 508.

[¶14] In finding that the spousal support was rehabilitative, the district court relied on an affidavit filed by Tim O'Keeffe. At the argument before the district court, Kari O'Keeffe argued that this affidavit could not be considered as

evidence. Although the district court did not receive the affidavit in evidence, the court apparently relied on the affidavit in making its findings. On appeal, neither side's brief argues the district court erred by making findings in reliance on information contained in the affidavit that was not in evidence. A party abandons an argument by failing to raise it in the party's appellate brief. *Bearce v. Yellowstone Energy Dev., LLC*, 2019 ND 89, ¶ 29, 924 N.W.2d 791; *Gowan v. Ward County Comm'n*, 2009 ND 72, ¶ 11, 764 N.W.2d 425.

[¶15] The district court found Kari O'Keeffe has a bachelor's degree in elementary education and about ten years of experience in the insurance industry. Kari O'Keeffe told Tim O'Keeffe that she could complete coursework to renew her teaching license in less than two years. Alternatively, Kari O'Keeffe has the ability to regain her insurance agent's license. Either path would increase her earning capacity and could be completed in considerably less than 120 months. The 120-month duration of the spousal support award is not consistent with the evidence regarding potential future increases in Kari O'Keeffe's earning capacity. These findings do not support a determination that the spousal support award here was rehabilitative.

[¶16] At the time of the divorce, there was a substantial earning disparity between the parties. Kari O'Keeffe worked as a consultant for Rodan & Fields and her income was approximately $5,106 per month, which included $5,000 per month from spousal support. Meanwhile, Tim O'Keeffe was earning approximately $17,683 per month from his law practice and title company. The district court stated its findings and reasoning as follows:

> Even if Kari seeks and attains higher education, absent an unanticipated event, this income disparity and earning power gap will persist for the duration of their respective careers." *See Innis-Smith*, ¶ 22, 905 N.W.2d at 914 ("Permanent spousal support may be appropriate when there is a substantial income disparity and a substantial disparity in earning power that cannot be adjusted by property division or rehabilitative support").

Even if Kari O'Keeffe would obtain the credentials necessary to teach or sell insurance, there would likely continue to be a significant disparity between her

income and Tim O'Keeffe's. Because this spousal support award addresses a substantial income disparity by directly transferring income rather than addressing a disparity in earning capacity, it does not support a finding the spousal support award was rehabilitative. *See Innis-Smith*, 2018 ND 34, ¶ 22, 905 N.W.2d 914.

[¶17] The district court also considered at length the effect terminating spousal support would have on the division of marital assets. Ultimately, it found spousal support necessary so that Kari O'Keeffe would not have to consume her property settlement to supplement her income. This does not support a finding that the spousal support award was rehabilitative. *See Krueger*, 2008 ND 90, ¶ 9, 748 N.W.2d 671. Additionally, the court found "[t]he spousal support terminating with remarriage supports it being permanent."

[¶18] The district court's ancillary findings of fact point toward a conclusion that the spousal support provision was for non-rehabilitative support. Yet, the district court found the spousal support provision was for rehabilitative support. We conclude the district court's finding that the spousal support provision is rehabilitative was clearly erroneous. Therefore, we reverse the order denying Tim O'Keeffe's motion to terminate spousal support, and we remand for further proceedings consistent with this opinion.

B

[¶19] On cross-appeal, Kari O'Keeffe argues the district court erred in determining the spousal support provision in the amended judgment did not constitute an agreement by the parties that spousal support would continue upon Kari O'Keeffe's cohabitation.

[¶20] The agreement incorporated in the judgment states that it is non-modifiable. Kari O'Keeffe argues the non-modifiable provision in the agreement evidences an intent by the parties that spousal support would continue for 120 months even if she cohabited in a relationship analogous to marriage for one year. In support, she cites *Toni v. Toni*, 2001 ND 193, ¶¶ 21–23, 636 N.W.2d 396, in which we narrowly held that parties to a divorce may

7

stipulate to divest the district court of jurisdiction to modify spousal support. Importantly, however, N.D.C.C. §§ 14-05-24.1(3) and (4) were not in effect when we decided *Toni* in 2001. The parties here negotiated their agreement with assistance of experienced family law counsel who were presumably aware of what was then a very recent change in the spousal support statute. With knowledge, whether actual or presumed, that the law requires a district court to terminate spousal support upon a showing of cohabitation, the parties did not include any language to the contrary. In *Markegard*, 2019 ND 170, ¶ 13, 930 N.W.2d 108, we held that a spousal support agreement must expressly provide for continued spousal support to a cohabiting spouse or N.D.C.C. § 14-05-24.1(3) will apply. Because the parties did not expressly agree that spousal support would continue upon Kari O'Keeffe's cohabitation, we conclude the district court did not err in determining the parties had not "otherwise agreed" under N.D.C.C. § 14-05-24.1(3).

## III

[¶21] Tim O'Keeffe also argues the district court abused its discretion in awarding attorney's fees.

> An award of attorney's fees is within the district court's discretion and will only be disturbed on appeal if the district court abuses its discretion. *Wolt v. Wolt*, 2011 ND 170, ¶ 26, 803 N.W.2d 534. "A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or if it misinterprets or misapplies the law." *Id.*

*Datz v. Dosch*, 2014 ND 102, ¶ 22, 846 N.W.2d 724.

[¶22] Section 14-05-23, N.D.C.C., authorizes a district court to award attorney's fees in a divorce case. A district court has discretion to award attorney's fees under N.D.C.C. § 14-05-23 based on the parties' relative abilities to pay, but it must make specific findings regarding the nonmoving party's ability to pay and the moving party's need. *Datz*, 2014 ND 102, ¶ 23, 846 N.W.2d 724.

[¶23] Here, the district court found Tim O'Keeffe has the ability to pay attorney's fees and Kari O'Keeffe does not. The court also found Tim O'Keeffe's filing of inadmissible mediation documents and the resulting motion to strike improperly filed documents unnecessarily increased the parties' costs. The district court did not err, because it made findings about the parties' relative need and ability to pay. Also, the district court's decision was not arbitrary, unreasonable, or unconscionable. The district court did not abuse its discretion in awarding attorney's fees to Kari O'Keeffe. We therefore affirm the award of attorney's fees.

IV

[¶24] Because the district court erred in determining the spousal support here was rehabilitative, we reverse the court's denial of Tim O'Keeffe's motion to terminate spousal support, and we remand for further proceedings consistent with this opinion. We affirm the district court's award of $1,590 in attorney's fees to Kari O'Keeffe.

[¶25] Jerod E. Tufte
       Douglas A. Bahr, D.J.
       Gerald W. VandeWalle
       Daniel J. Crothers
       Jon J. Jensen, C.J.

[¶26] The Honorable Douglas A. Bahr, District Judge, sitting in place of McEvers, J., disqualified.


**Jensen, Chief Justice, concurring specially.**

[¶27] The majority opinion is well written and I have signed the majority. I agree with the result of section II.A because the parties did not raise a challenge to the "evidence" upon which the district court relied to make its factual findings. I write separately because the submission of affidavits without stipulating to the admissibility of the contents or without providing subsequent testimony is becoming more and more frequent. Submission of affidavits without stipulating to the admissibility of the contents or without

9

providing subsequent testimony creates an evidentiary deficiency. Had the evidentiary issue been raised I would have reached the same result, but for a different reason; I would have reversed and remanded this case to the district court for further proceedings following termination of the spousal support because Kari O'Keeffe failed to satisfy her burden to establish an exception to termination following her concession that she was cohabitating with another individual.

[¶28] An evidentiary hearing on Timothy O'Keeffe's motion to terminate his spousal support was set at the request of the district court. At the start of the initial hearing, the parties made the following statements to the court:

> [W]e have agreed that we will submit this to the court not only on the filings that have been filed but on our arguments to be made here today. I don't think either party intends to put on any additional testimony or evidence today.
>
> . . . .
>
> [W]e both agree that things are adequately briefed. This is a legal issue and oral argument will suffice.

[¶29] The district court requested clarification regarding what the parties believed had been provided as evidence. The court noted the following:

> So, the exhibits or proposed exhibits that have been filed, are those considered offered and accepted? I usually require them to be stipulated to or offered and I make a ruling on them at trial, just the fact that they were filed doesn't mean that they are admitted into evidence.

[¶30] Kari O'Keeffe's counsel responded to the district court's question as follows:

> Your Honor, with regard to…I agree with the Court. I think without marking and offering them they are not part of the evidentiary record. With regard to Mr. O'Keeffe's affidavit, I believe that is supportive of his motion but not evidence. I have a

concern that there's information in Mr. O'Keeffe's affidavit that would be hearsay or not supported by adequate foundation, but as to the attachments, so the exhibits that are attached to Mr. O'Keeffe's affidavit, I would have no objection to those being admitted as evidence.

[¶31] At that juncture, the district court acknowledged the exhibits to Timothy O'Keeffe's affidavit would be received. Those exhibits related exclusively to the issue of whether or not Kari O'Keeffe was cohabitating with another individual. Subsequent to the admission of the exhibits attached to Timothy O'Keeffe's affidavit, no other exhibits were offered or received, and no testimony was provided or facts otherwise stipulated to by the parties.

[¶32] During the subsequent legal arguments to the district court, Timothy O'Keeffe's counsel repeatedly referred to Timothy O'Keeffe's affidavit as factually supporting his motion. In response, Kari O'Keeffe's counsel correctly noted that Timothy O'Keeffe's affidavit was not evidence. Specifically, Kari O'Keeffe's counsel noted the following:

> Ms. Lyson made statements with regard to my client's situation at the time the parties' divorced, in her presentation, as to whether the court should determine this support to be rehabilitative or permanent in nature. And your Honor, what is not in the record is not evidence. So, I think it inappropriate for Ms. Lyson to talk with you today, your Honor, or for the court to rely on any of the statements that were made with regard to my client's earning ability at the time of the divorce.

[¶33] Timothy O'Keeffe's counsel responded to the assertion the affidavits were not evidence as follows:

> I just want to address this statement that I made statements that aren't in the record. Mr. O'Keeffe has submitted a sworn affidavit based upon his personal knowledge and information about the facts and circumstances that existed throughout their marriage and at the time of their divorce regarding their relative circumstances and place in life. That is part of the record, your Honor. There's not been anything in the record to substantiate the

statements that were made by Ms. Jensen and if the court feels we need to take some testimony on that then I think that this would be the time to do it, otherwise, Mr. O'Keeffe's affidavit is part of the record. It is sworn. It is competent evidence of his first-hand knowledge of the circumstances that existed at that time and the court can consider it when looking at was this rehabilitative award or was it a permanent award.

[¶34] Subsequently, when the district court entered its order on the motion for termination of spousal support it made the following findings:

> Tim attests that Kari has an Elementary Education Bachelor of Arts degree, however, she never secured a full-time teaching job, only substitute teaching. He further attests that after their marriage in 1997, Kari began working for her father's insurance agency, where she worked full-time from 1999 to 2009. Tim attests that after this Kari worked as a representative for Rodan & Fields, a short period of time at Sanford, and became assistant manager at a clothing store in the mall. She told him that she could complete coursework to renew her North Dakota teaching license, which would take less than two years to complete. He attests that in the alternative, he understands that she could have regained licensure as an insurance agent. Neither option, he attests, would have taken 120 months to complete. On this basis, he argues that the spousal support for 120 months was not intended to provide Kari with the opportunity for education, work skills, experience, or to become self-supporting, as she already had a college degree and over ten years of experience as an insurance agent.

The court, in making its factual findings, clearly incorporated the substance of Timothy O'Keeffe's affidavit.

[¶35] Rule 801(c) of the North Dakota Rules of Evidence provides as follows:

> (c) Hearsay. "Hearsay" means a statement that:
>     (1) the declarant does not make while testifying at the current trial or hearing; and
>     (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

[¶36] Timothy O'Keeffe's affidavit is hearsay. *Cusey v. Nagel*, 2005 ND 84, 695 N.W.2d 697; *Mehus v. Thompson*, 266 N.W.2d 920, 924 (N.D. 1978). The district court recognized the affidavit was hearsay and at the start of the hearing questioned the parties how they planned to proceed. Kari O'Keeffe agreed to the admission of the exhibits attached to the affidavit, but specifically noted she would not agree to the admission of the allegations within the affidavit itself. Timothy O'Keeffe did secure a stipulation to the admissibility of the contents of the affidavit or call Timothy O'Keeffe as a witness.

[¶37] Rule 802 of the North Dakota Rules of Evidence reads as follows:

> Hearsay is not admissible unless any of the following provides otherwise:
> (a) a statute;
> (b) these rules; or
> (c) other rules prescribed by the North Dakota Supreme Court.

[¶38] Timothy O'Keeffe's affidavit was hearsay and was not admissible under a statute, the Rules of Evidence, or other rule promulgated by this Court. It was inadmissible hearsay which should not have been used for the subsequent factual findings of the district court.

[¶39] Had the evidentiary deficiency been properly raised in this Court, it would not have been necessary for this Court to make a determination of whether or not the spousal support was rehabilitative or non-rehabilitative in order to reverse the district court's finding that the spousal support was rehabilitative. A party moving for termination of spousal support has the initial burden to prove cohabitation justifying termination. *Markegard v. Willoughby*, 2019 ND 170, ¶ 16, 930 N.W.2d 108 (citing *Varty v. Varty*, 2019 ND 49, ¶ 6, 923 N.W.2d 131). If that initial burden is met, the party opposing the motion has the burden to prove one of the exceptions applies. *Id.* (citing *Cermak v. Cermak*, 1997 ND 187, ¶ 6 n.1, 569 N.W.2d 280).

[¶40] Here, Timothy O'Keeffe met his initial burden to establish cohabitation justifying termination, a fact conceded by Kari O'Keeffe. The burden then shifted to Kari O'Keeffe to prove one of the exceptions applied.

[¶41] Kari O'Keeffe first argued that the parties' judgment expressly exempted cohabitation as a reason for termination of the spousal support. Section II.B. of the majority opinion properly concludes the parties' judgment did not exempt cohabitation as reason for termination of spousal support.

[¶42] Kari O'Keeffe's second argument was that the spousal support was rehabilitative and exempt from termination. The judgment itself is silent on whether or not the spousal support was rehabilitative or non-rehabilitative. Neither party offered admissible evidence to establish their intent at the time the divorce judgment was entered; the affidavit of Timothy O'Keeffe was hearsay, the parties did not stipulate to the admission of evidence other than the documents related to cohabitation, and no testimony was provided during the hearing. The district court improperly considered Timothy O'Keeffe's affidavit and unnecessarily made a determination regarding the nature of the support. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if on the entire record we are left with a definite and firm conviction a mistake has been made. *Sims v. Sims*, 2020 ND 110, ¶ 12, 943 N.W.2d 804.

[¶43] As noted above, once Kari O'Keeffe conceded she was cohabitating with another individual the burden of proof shifted to her to prove an exception preventing termination of the spousal support. In the absence of testimony from either party or affidavits properly stipulated to be evidence, the district court received insufficient evidence to conclude Kari O'Keeffe had met her burden to prove an exception to termination of the support. In the absence of admissible evidence, had the issue been raised on appeal, we could have concluded the district court's finding the support was rehabilitative was clearly erroneous because of insufficient evidence for Kari O'Keeffe to satisfy her burden of proof. Neither the district court nor this Court are required to make a definitive statement regarding the nature of the spousal support obligation in the absence of evidence necessary for the party who carries the burden of proof to satisfy that burden. The concept of burden of proof is perhaps best stated in terms of a criminal case: a finding of not guilty only requires the jury to determine the prosecution did not meet its burden of proof, it does not

14

require a determination the defendant is innocent.  It is within our standard of review to conclude a finding is clearly erroneous if there is no evidence in the record to support the finding.

[¶44] I concur in the analysis and result within the majority opinion. I write to caution parties on the use of affidavits without stipulating to the admissibility of the contents of the affidavits as evidence or providing subsequent testimony.

[¶45] Jon J. Jensen, C.J.